**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000071**
**30-JUN-2014**
**12:12 PM**

NOS. CAAP-11-0000071; CAAP-11-0000074;
CAAP-11-0000433; and CAAP-11-0000434

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-11-0000071**
JOHN F. DAGRES; and JUDITH FITZGERALD, Appellants-Appellees,
v.
COUNTY OF HAWAI'I PLANNING DEPARTMENT and
BOBBY JEAN LEITHEAD-TODD, DIRECTOR OF THE PLANNING
DEPARTMENT OF THE COUNTY OF HAWAI'I, Appellees-Appellants.
and
COUNTY OF HAWAI'I BOARD OF APPEALS; and HAWAI'I CONFERENCE
FOUNDATION, a Hawai'i non-profit corporation,
Appellees-Appellees.

**CAAP-11-0000074**
JOHN F. DAGRES; and JUDITH FITZGERALD, Appellants-Appellees,
v.
HAWAI'I CONFERENCE FOUNDATION, a Hawai'i non-profit corporation,
Appellee-Appellant,
and
COUNTY OF HAWAI'I BOARD OF APPEALS; COUNTY OF HAWAI'I BOARD
OF APPEALS; COUNTY OF HAWAI'I PLANNING DEPARTMENT;
BOBBY JEAN LEITHEAD-TODD, DIRECTOR OF THE PLANNING
DEPARTMENT OF THE COUNTY OF HAWAI'I,
Appellees-Appellees.

**CAAP-11-0000433**
JOHN F. DAGRES; and JUDITH FITZGERALD, Appellants-Appellants,
v.
COUNTY OF HAWAI'I BOARD OF APPEALS; COUNTY OF HAWAI'I
PLANNING DEPARTMENT; BOBBY JEAN LEITHEAD-TODD, DIRECTOR OF
THE PLANNING DEPARTMENT OF THE COUNTY OF HAWAI'I and HAWAI'I
CONFERENCE FOUNDATION, a Hawai'i non-profit corporation,
Appellees-Appellees.

**CAAP-11-0000434**
JOHN F. DAGRES; and JUDITH FITZGERALD, Appellants-Appellees,
v.
HAWAI'I CONFERENCE FOUNDATION, a Hawai'i non-profit corporation,
Appellee-Appellant,
and

COUNTY OF HAWAI'I BOARD OF APPEALS; COUNTY OF HAWAI'I PLANNING DEPARTMENT; BOBBY JEAN LEITHEAD-TODD, DIRECTOR OF THE PLANNING DEPARTMENT OF THE COUNTY OF HAWAI'I, Appellees-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NOS. 10-1-133K, 10-1-134K, 10-1-135K)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

## I.  Introduction

This consolidated appeal involves efforts by Hawai'i Conference Foundation[1] (HCF) to obtain regulatory approvals to renovate three buildings (Buildings A, B, and C) located on a 26,014 square-foot property that HCF owns in Keauhou, Hawai'i (Property).  Because the Property is located within the County of Hawaii's Special Management Area (SMA),[2] the renovations proposed by HCF were subject to SMA regulations.  HCF thus applied to the County of Hawai'i Planning Department (Planning Department) requesting SMA exemptions for the proposed action to Buildings A and C, and requesting a SMA Minor Use Permit for Building B. After the Director of the Planning Department, Bobby Jean Leithead-Todd (Planning Director), issued determinations approving HCF's requests with various conditions, the owners of adjacent properties, John F. Dagres (Dagres) and Judith Fitzgerald (Fitzgerald) (collectively, the Neighbors), appealed the Planning Director's decisions to the County of Hawai'i Board of Appeals (Board).

Before the Board, the Neighbors argued *inter alia* that HCF's proposed action should be subject to further SMA review. The Board affirmed the Planning Director.  The Neighbors then appealed the Board's decisions to the Circuit Court of the Third

---

[1]  We do not specifically identify each party's status as Appellee or Appellant in the text of this opinion because each party (except the County of Hawai'i Board of Appeals) is the Appellant in at least one of the appeals in this consolidated matter.

[2]  "'Special management area' means the land extending inland from the shoreline as delineated on the maps filed with the authority as of June 8, 1977, or as amended pursuant to section 205A-23."  Hawaii Revised Statutes (HRS) § 205A-22 (2001 and 2013 Supp.).  "Authority" is defined in HRS § 205A-22.

Circuit (circuit court) in three separate civil cases (Civ. No. 10-01-133K, Civ. No. 10-01-134K, and Civ. No. 10-01-135K) which were consolidated (collectively, the Circuit Court Cases).[3] The circuit court reversed in part the Planning Director and the Board, dismissed the remaining issues on appeal, and denied the Neighbors' motion for attorneys' fees and costs. HCF, the Planning Department/Planning Director,[4] and the Neighbors have each appealed from various decisions and orders of the circuit court.

## II. Asserted Points of Error

### A. CAAP-11-0000071

In CAAP-11-0000071, Planning Director appeals from the Final Judgment (Judgment) in the Circuit Court Cases, filed on May 2, 2011, which reversed the "decisions of the Planning Director and the Board exempting Buildings 'A' and 'C' from the special management area process as set forth in the Planning Director's decisions in her October 20, 2009 letter to HCF[.]" The Judgment purported to resolve all appeals and claims against all parties. The Planning Director also challenges the circuit court's findings of fact, conclusions of law and order filed on January 5, 2011 (Circuit Court FOF/COL).[5]

On appeal, Planning Director asserts the circuit court erred by (1) concluding that HCF's proposed uses, activities or operations are "development" within the meaning of HRS § 205A-22 (2001 & 2010 Supp.)[6] and Rule 9-4(10)(A) of the County of Hawai'i

---

[3]  The Honorable Ronald Ibarra presided.

[4]  Although both the Planning Department and the Planning Director are parties to the appeal, we will refer to them collectively as "Planning Director."

[5]  The circuit court's findings, conclusions and order of January 5, 2011 are set forth in a document entitled "Appellants John F. Dagres and Judith Fitzgerald's Findings of Fact; Conclusions of Law; Order."

[6]  In 2009, HRS § 205A-22 provided in pertinent part:

§205A-22 Definitions.  As used in this part, unless the context otherwise requires:
.  .  .  .

(continued...)

3

Planning Commission Rules (1992) (HPC Rules),[7] and that no exemption is applicable; (2) concluding that the proposed uses, activities, and operation may have a cumulative impact, or a significant environmental or ecological effect, on the SMA and are thus "development" as defined by HRS § 205A-22 and the HPC Rules; and (3) concluding that the Planning Director and the Board erred in not requiring an environmental assessment (EA) or environmental impact statement (EIS) pursuant to HRS Chapter 343.[8]

### B.   CAAP-11-0000074 and CAAP-11-0000434

HCF is the Appellant in both CAAP-11-0000074 and CAAP-11-0000434.   In these cases, HCF asserts the same points of error

---

[6](...continued)

"Development" means any of the uses, activities, or operations on land or in or under water within a special management area that are included below:

. . . .

    (5)    Construction, reconstruction, demolition, or alteration of the size of any structure.

"Development" does not include the following:

. . . .

    (6)    Repair, maintenance, or interior alterations to existing structures; [and]

. . . .

    (14)    Structural and nonstructural improvements to existing single-family residences, where otherwise permissible; [ ]

. . . .

provided that whenever the authority finds that any excluded use, activity, or operation may have a cumulative impact, or a significant environmental or ecological effect on a special management area, that use, activity, or operation shall be defined as "development" for the purpose of this part.

In 2011, HRS § 205A-22 was amended so that exemption (14) is now exemption (15).  See 2011 Haw. Sess. Laws Act 153, § 3 at 388.

[7]  The Planning Director's decisions subject to this appeal were made in 2009 pursuant to the version of the HPC Rules compiled in 1992.  In 2010, after the Planning Director issued the pertinent decisions, the numbering of the HPC Rules was amended.  Throughout this opinion, we cite to the version applicable at the time of the Planning Director's decisions.

[8]  The Planning Director challenges conclusions of law (COL) Nos. 30, 34-42, 47, 48, 50, 51, and 60-63.  The Planning Director asserts it does not challenge specific findings of facts (FOF) because it takes issue with how the circuit court applied the law to the facts, not the facts themselves.

(in CAAP-11-0000434, HCF incorporates by reference its opening and reply briefs from CAAP-11-0000074).

HCF appeals from the Judgment, and in so doing challenges (1) parts of the Circuit Court FOF/COL;[9] (2) an "Order Denying Appellee Hawaii Conference Foundation's Motion to Dismiss Or, In The Alternative, Motion For Summary Judgment [Filed August 25, 2010] and Order Denying Appellee County of Hawaii Board of Appeals and Appellee Bobby Jean Leithead-Todd, Director of the Planning Department's Joinder in the Motion" (Order Denying HCF's Motion to Dismiss) filed October 25, 2010; and (3) the circuit court's oral denial of HCF's motion to add evidence to the record in the Circuit Court Cases on October 26, 2010.

HCF contends the circuit court erred by:

(1)(a) refusing to consider evidence of mootness outside the pleadings upon HCF's motion to dismiss, (b) denying HCF's motion to dismiss for mootness, (c) denying HCF's motion to add evidence to the record and its request for judicial notice relative to its assertion of mootness, and (d) adjudicating Civ. No. 10-1-133K, regarding the exemptions for Buildings A and C, without subject matter jurisdiction;

(2) holding that Buildings A and C were not "existing" structures;

(3) holding that the proposed changes to Building A and C are not exempted from the definition of "development" pursuant to HRS § 205A-22(6);

(4)(a) holding that the proposed activity may have "cumulative impact, or a significant environmental or ecological effect" on the SMA and is thus "development", (b) ignoring the Board's finding of no adverse cumulative impact, (c) engaging in independent fact-finding on cumulative impact, and (d) holding that the Planning Director failed to consider cumulative impact of the proposed developments as a whole;

---

[9] HCF assigns error to FOF Nos. 11, 19, 20-21, 30, 43-46, 49, and 55, and COLs Nos. 15, 34-37, 40-42, 47-50, 60-62, and 64-68.

(5) holding that the SMA exemptions violated HRS § 343-5(a)(3) (2010);[10]

(6) perpetrating a judicial taking; and

(7) violating the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., by treating HCF less favorably than a secular landowner.

## C.   CAAP-11-0000433

In CAAP-11-0000433, the Neighbors appeal from the Judgment and challenge the circuit court's "Order Granting in Part and Denying in Part Appellants' Motion for Reconsideration of Jurisdiction for Award of Attorneys' Fees and Costs" (Order re Attorneys' Fees and Costs) filed May 2, 2011.  The Neighbors contend the circuit court erred by concluding that the facts of this case did not support an award of attorneys' fees and costs under the Private Attorney General Doctrine (PAGD).

For the following reasons, we conclude that the circuit court was correct in reversing the rulings by the Planning Director and the Board that exempted the proposed action to Buildings A and C from the definition of "development" and thus from further SMA review.  Moreover, the circuit court did not err in denying attorneys' fees and costs to the Neighbors.

## III.  Background

On October 9, 2009, HCF submitted a SMA Use Permit Assessment Application (October 2009 Assessment Application) to the Planning Department regarding the Property.  HCF, a Hawai'i non-profit corporation and the investment and property management arm of the Hawai'i Conference of the United Church of Christ, is the fee owner of the Property.  The Property is zoned Single-Family Residential (RS-10) and contains an area approximately 26,014 square-feet.  The Property is located within the County of

---

[10]   HRS § 343-5(a)(3) provides:

§343-5. Applicability and requirements. (a) Except as otherwise provided, an environmental assessment shall be required for actions that:

. . . .
    (3)   Propose any use within a shoreline area as defined in section 205A-41[.]

Hawaii's SMA, the area along the shoreline protected to ensure preservation and restoration of the coastal zone of the State of Hawaiʻi. See HRS §§ 205A-21 to -23 (2001 & 2010 Supp.).

Per the October 2009 Assessment Application, the Property holds three structures: Buildings A, B, and C.

Building A is a 912 square-foot structure that originally was legally constructed in 1960 with a footprint of a 864 square-foot dwelling, but has since been converted without a building permit into a 5-bedroom, 4-bathroom, and no kitchen structure. Building B is a 672 square-foot structure for which no building permit was ever issued. Building C was initially built in 1960 pursuant to a building permit based on a floor plan matching Building A, thus consisting of a 864 square-foot dwelling. Subsequently, at some unknown time, Building C was expanded to a 1,884 square-foot structure, without applicable building permits,

> consist[ing] of a large room designated as an "existing conference room" . . . with a small kitchen and "powder room" in the original 864 square foot structure. Added to this structure is a three-bedroom, three-bath building with existing storage and laundry that has no internal connection to the conference room structure, nor any internal connection between the bedrooms. Between the two buildings is a walk-in freezer and storage room not connected with internal connections to either the existing conference room or the all bed and bath building.

In the October 2009 Assessment Application submitted to the Planning Director, HCF proposed both interior and exterior renovations to the three buildings located on the Property in order to facilitate single-family use and "implement Conference ministries." HCF sought the following:

> 1.    Interim safety improvements: SMA exemption to allow for the boarding of windows and entry of Buildings A and B and completion of roofing on Building C.

> 2.    Building A: SMA exemption to allow for the interior and exterior renovations (including a new kitchen) to the first existing single-family residential dwelling to implement the residence quarters for the ministry interns. No more than five unrelated individuals will reside in the single-family residential dwelling during any period.

7

3.    Building B: <u>SMA Minor Use Permit</u> to allow for the interior and exterior renovations to the existing building to be utilized as a meeting facility for classroom activities and church related functions, with no overnight accommodations. The valuation of the renovations will not exceed $125,000.

4.    Building C: <u>SMA exemption</u> to allow for the interior and exterior renovations to the second existing single-family residential dwelling to implement the in-house parsonage residence and accessory related uses.

Pursuant to HRS Chapter 205A,[11] the County of Hawai'i Planning Commission adopted the "Special Management Area Rules and Regulations of the County of Hawaii" (Rule 9 of the HPC Rules). HPC Rule 9-1 and 9-3. Pursuant to HPC Rule 9-8, a permit is required for any "development" within the SMA.[12] The Planning Department evaluates proposed uses, activities or operations within the SMA to determine if a permit is required. HPC Rule 9-10. In 2009, Rule 9-10 instructed in pertinent part:

E.    Where the Director finds the proposed use, activity or operation is not in excess of $125,000 in valuation; and will not have a significant adverse effect on the [SMA], [the Director] shall, after the review and recommendation of the Chief Engineer, issue a [SMA] Minor Permit.

.  .  .  .

F.    The Director shall declare that a [SMA] Use Permit is required if [the Director] finds that the proposed use, activity or operation has a valuation in excess of $125,000 or may have a significant adverse effect on the [SMA].

---

[11]    HRS § 205A-27 (2001) provides, "[t]he authority is designated the special management area authority and is authorized to carry out the objectives, policies and procedures of this part."

[12]    In 2009, HPC Rule 9-8 provided:

9-8    <u>Permits Required for Development</u>

A.    No development shall be allowed within the Special Management Area without obtaining a permit in accordance with these Rules and Regulations.

B.    No State or County Agency authorized to issue permits within the [SMA] shall authorize any development unless approval is first received in accordance with these Rules and Regulations.

>              G.     The Director shall declare the proposed use, activity
>                     or operation exempt from these Rules and Regulations
>                     if [the Director] finds the proposal is exempt under
>                     Rule 9.4(10)B.

(Emphasis added.)

Rule 9-4(10) provided in pertinent part:[13]

>          (10)    "Development" means any of the following uses,
>                  activities, or operations on land or in or under water
>                  within the [SMA]:
>
>              A.     "Development" includes the following:
>
>                     • • • •
>
>                     (v)    Construction, reconstruction, or
>                            alteration of the size of any
>                            structure.
>
>              B.     "Development" does not include the
>                     following uses, activities or operations:
>
>                     • • • •
>
>                     (vi)   Repair, maintenance, or interior
>                            alterations to existing structures
>                            or relating to existing uses; [and]
>
>                     • • • •
>                     (xv)   Structural and non-structural
>                            improvements to existing
>                            single-family residences, including
>                            additional dwelling units, where
>                            otherwise permissible[.]
>                     • • • •
>
>              C.     Any proposed use, activity or operation
>                     listed in paragraph B shall be deemed to
>                     be "Development" until the Director has
>                     determined it to be exempted from the
>                     definition of "development."
>
>              D.     Whenever the Director finds that any use,
>                     activity, or operation as excluded in
>                     paragraph B is or may become part of a
>                     larger project, the cumulative impact of
>                     which may have a significant adverse
>                     environmental or ecological effect on the
>                     [SMA], that use, activity, or operation
>                     shall be defined as "development" for the
>                     purpose of these Rules and Regulations.

(Emphasis added.)

---

[13]   The relevant exemptions under the HPC rules are set forth at HPC
Rule 9-4(10)(B)(vi) and (xv), which we will refer to respectively as Exemption
6 and Exemption 15.  See also HRS § 205A-22.

In a letter dated October 20, 2009, the Planning Director ruled that pursuant to HPC Rule 9-4, the proposed action to Buildings A and C were exempt from the definition of "[d]evelopment" because "[r]epair, maintenance or interior alterations to existing structures or relating to existing uses" is an express exemption and the initial construction of Buildings A and C was legal. The Planning Director further determined that the proposed activity would not disrupt public access to the shoreline or public use of the shoreline area, and would not have a substantial adverse environmental effect on the SMA.

The Planning Director determined Building B was development within the meaning of Rule 9-4(10) because it was "[c]onstruction, reconstruction, demolition, or alteration of the size of any structure[,]" and no exemption applied.

On November 4, 2009, HCF filed an Application for Plan Approval regarding Building B to serve as a "[m]eeting facility to serve as a community resource and cultural enrichment building." In a letter dated November 9, 2009, the Planning Director granted HCF a SMA Minor Permit to allow for the "as-built" meeting facility, subject to compliance with conditions of approval and all applicable zoning and building code requirements. On November 10, 2009, the Planning Director issued a SMA Minor Permit (No. 09-000132) for Building B. The Planning Director determined the "development," Building B, will not have any significant adverse environmental or ecological effect on the SMA. In a letter dated November 12, 2009, the Planning Director granted Final Plan Approval for the "[a]s-built [m]eeting [f]acility, Building B".

Dagres and Fitzgerald separately own certain properties which abut or are adjacent to the Property. The Neighbors filed three appeals to the Board from the decisions of the Planning Director: BOA 09-000089 filed on November 19, 2009 (appeal of Planning Director's decision dated October 20, 2009, which exempted Buildings A and C); BOA 09-000091 filed December 9, 2009 (appeal of Planning Director's decision dated November 9, 2009,

10

granting the SMA Minor Permit for Building B); and BOA 09-000092 filed December 11, 2009 (appeal of Planning Director's decision dated November 12, 2009, approving Final Plan Approval for Building B). The Board consolidated the cases into one hearing.

The Board issued its Findings of Fact, Conclusions of Law, and Decision and Order, (Board's FOF/COL) signed June 25, 2010, in which it held that the Neighbors failed to meet their burdens of proof, thus, the Board denied the appeals and affirmed the Planning Director's decisions. Any action of the Board requires four votes to validate, not a simple majority. Relevant to our purposes, the Board voted in regards to the exemptions for Buildings A and C three (3) ayes and two (2) noes that the Neighbors met their burden of proof to show the Planning Director clearly erred or was arbitrary and capricious in exempting Buildings A and C from SMA review. The Board's FOF/COL stated in relevant part (citations have been omitted):

### FINDINGS OF FACT

18. The Director does not refer to the definition of "existing building" as defined in Chapter 5 (hereinafter "Building Code") of the Hawai'i County Code when determining exemptions from "development" under HRS § 205A-22.

. . . .

21. Building "B" was not considered an "existing building" by the Director because there was nothing in the Real Property Tax records indicating its physical existence on the ground.

. . . .

30. The Project proposed by HCF will not have a substantial adverse ecological or environmental effect on the SMA, taking into account potential cumulative effects.

### CONCLUSIONS OF LAW

9. "Development" does not include "[r]epair, maintenance, or interior alterations to existing structures . . . ."

10. The Director has no authority to enforce Chapter 5 ("Building Code") of the Hawai'i County Code.

11. The County's Zoning Code provides that "[t]here may be more than one single-family dwelling on each building site in an RS district provided there is not less than the required minimum building site area for each dwelling."

12. The minimum building area for a property located in the RS-10 zone is 10,000 square feet.

13. A "meeting facility" is a permitted use in the single-family residential zoning district (RS).

The Neighbors appealed to the circuit court in the Circuit Court Cases seeking reversal and/or modification of the Board's decisions.[14]

On August 25, 2010, HCF filed with the circuit court, and the Board and Planning Director joined, a motion to dismiss or, in the alternative, a motion for summary judgment, seeking to have the case dismissed as moot. On October 25, 2010, the circuit court entered the Order Denying HCF's Motion to Dismiss. The circuit court determined that, because the motion to dismiss included material outside of the pleadings and outside the record on appeal, and review in an agency appeal is confined to the pleadings as set forth in the record on appeal, it would treat the motion as a motion for summary judgment. The circuit court ruled that a motion for summary judgment is not a proper motion in an appeal filed pursuant to HRS § 91-14 (2012) because such motion is inconsistent with the statute and Hawai'i Rules of Civil Procedure (HRCP) Rule 72.

On January 5, 2011, the circuit court entered the Circuit Court FOF/COL. The circuit court reversed in part the decisions of the Planning Director and the Board. In pertinent part, the circuit court concluded (citations and record references have been omitted):

> 30. To be an "existing" structure or an "existing" single family residence as used in HRS § 205A-22 and HPC Rule 9-4(10)B (now 9-4(e)(2)), the structure must have been constructed in accordance with applicable law at the time it was built.
>
> . . . .
>
> 34. The proposed uses, activities and operations . . . to Building "A" . . . go beyond "repair and maintenance" within the meaning of HRS § 205A-22, exemption (6).
>
> . . . .

---

[14] The Notices of Appeal to the circuit court, all filed on April 9, 2010, identify Civ. No. 10-01-133K as the appeal of BOA 09-000089, Civ. No. 10-01-134K as the appeal of BOA 09-000091, and Civ. No. 10-01-135K as the appeal of BOA 09-000092.

37. Building "A," being remodeled to its present configuration without a building permit and with no inspections, is not an "existing" single-family residence nor an "existing" structure within the meaning of HRS § 205A-22 and the HPC Rules.

38. The Planning Director's and Board's decision that Building "A" is not a development as defined by HRS § 205A-22 and the HPC Rules and is exempt from the SMA process is in violation of statutory provisions; is affected by other error of law; is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and is arbitrary or capricious, or characterized by abuse of discretion or a clearly unwarranted exercise of discretion, as the proposed uses, activities or operations constitute a "development" as set forth in HRS § 205A-22 and HPC Rule 9-4(10)A (now Rule 9-4(e)(1)) and no exemption set forth in HRS § 205A-22 and HPC Rule 9-4(10)(B)(now 9-4(e)(2)) is applicable.

39. The Court reverses the decision of the Planning Director and Board of Appeals exempting Buildings "A" and "C" from the SMA process as set forth in the Planning Director's decisions in her October 20, 2009 letter and determines the proposed uses, activities and operations as set forth in HCF's Assessment Application are a "development" within the meaning of HRS § 205A-22.

40. Building "C," as currently configured and as configured when assessed by the Planning Director . . . is neither an "existing single-family residence" nor an "existing structure" as defined by HRS § 205A-22 and the HPC Rules.

41. The Planning Director's and Board's decision that Building "C" is not a development as defined by HRS § 205A-22 and the HPC Rules and is exempt from the SMA process is in violation of statutory provisions; is affected by other error of law; is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and, is arbitrary or capricious, or characterized by abuse of discretion or a clearly unwarranted exercise of discretion, as the proposed uses, activities or operations are a "development" within the meaning of HRS § 205A-22 and HPC Rule 9-4(10)A (now Rule 9-4(e)(1)) and no exemption set forth in HRS § 205A-22 and HPC Rule 9-4(10)(B)(now 9-4(e)(2)) is applicable.

. . . .

47. The Planning Director's and Board's decisions did not consider the cumulative impact and/or the environmental and ecological effect on the [SMA] of the development as a whole. The Planning Director only evaluated Building "B" and not Buildings "A" and "C," or the development as a whole. The Planning Director interpreted the law to provide that, if the proposed use is single family residential, there can be no cumulative effect or adverse environmental and ecological effect.

. . . .

50. The Planning Director's and Board's decisions that there may not be any cumulative impact and/or adverse environmental and ecological effect from the proposed activity, use and operation of the proposed development fail to consider: (1) the adverse possible effects on the surrounding waters including Heeia Bay; (2) the social welfare and quiet enjoyment of the property of all surrounding property owners; (3) the adverse effect that such an increase in density and intensity of usage, as proposed, will create on the surrounding property, improvements, streets, traffic, noise levels and community characteristics located within the affected [SMA]. Thus, the Planning Director's and the Board's decisions are in violation of statutory provisions; are affected by other error of law; are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and, is arbitrary or capricious, or characterized by abuse of discretion or a clearly unwarranted exercise of discretion.

51. The Court reverses the decisions of the Planning Director and Board exempting Buildings "A" and "C" from the SMA process as set forth in the Planning Director's decisions in her October 20, 2009 letter and determines that since the proposed uses, activities and operations may have a cumulative impact, or a significant environmental or ecological effect on a [SMA], such proposed uses, activities and operations constitute a development as defined by HRS § 205A-22 and the HPC Rules.

. . . .

60. It is consistent with the stated purposed of HRS § 343 to interpret "any use" to include secondary and accessory uses, including use of the pool and walkways, located within the shoreline area that will take place as a result of the proposed activity or operation.

. . . . .

62. The decisions of the Planning Director and the Board not to require an EA or EIS pursuant to HRS § 343 are in violation of statutory provisions; are affected by other error of law; are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and, are arbitrary or capricious, or characterized by abuse of discretion or a clearly unwarranted exercise of discretion.

63. The court reverses the decisions of the Planning Director and Board not to require an EA or EIS.

14

On January 19, 2011, the Neighbors filed a motion for award of attorneys' fees and costs under the PAGD.[15] In a letter dated March 15, 2011, the circuit court stated its jurisdiction over the appeal had been divested due to HCF's and the Planning Director's filing of notices of appeal from the Circuit Court FOF/COL in CAAP-11-0000071 and CAAP-11-0000074. On March 28, 2011, the Neighbors filed a motion for reconsideration of jurisdiction with the circuit court. On May 2, 2011, the circuit court granted in part and denied in part the Neighbors' motion. The circuit court granted the motion in so far as the court ruled it had jurisdiction to hear the motion for attorneys' fees and costs, but denied the motion for attorneys' fees and costs declaring "the facts of this case do not support an award of attorney fees and costs under the [PAGD.]"

On May 2, 2011, the circuit court entered the Judgment in favor of the Neighbors and against the Board, Planning Director and HCF, which: reversed the decisions that Buildings A and C were exempted from the SMA process; determined that the proposed uses, activities and operations were "development" within HRS § 205A-22; and dismissed all remaining appeals and claims. Given its ultimate rulings, the only case on which the circuit court reached the merits was Civ. No. 10-1-133K, the appeal related to the SMA exemptions for Buildings A and C.

## IV. Discussion

### A. Mootness of the Neighbors' Appeal

The circuit court ultimately did not rule upon the propriety of the SMA Minor Permit or Final Plan Approval for Building B (apparently because these actions were rescinded by the Planning Director). However, the circuit court did address the merits of the exemptions for Buildings A and C. HCF contends this was error because all of the issues before the circuit court

---

[15] The Neighbors requested fees and costs totaling $269,231.81. The Neighbors' counsel filed a declaration attesting they had incurred $210,492.15 in fees and $11,488.22 in costs. Dagres filed a declaration in which he declared that he expended $58,739.66 for the professional services of Klaus D. Conventz as a real estate consultant.

had been rendered moot by subsequent actions by the Planning Director. HCF argues the circuit court erred in refusing to consider evidence of mootness that was outside the record or the pleadings in deciding HCF's HRCP Rule 12(b)(1) motion to dismiss, denying said motion to dismiss, and also erred in denying HCF's motion to add evidence which would demonstrate mootness.

The Neighbors argue that the circuit court did not err because there is no indication the circuit court refused to consider the identified evidence outside the record, review of an agency decision is limited to the record on appeal, the evidence before the circuit court did not demonstrate mootness as to the exemptions, and, in general, revocation of the SMA Permit and Final Plan Approval as to Building B had no effect on the exemptions for Buildings A and C. Further, the Neighbors argue that if the exemptions for Buildings A and C are not reviewed here, HCF could dodge judicial review by merely refiling new or revised applications, forcing the Neighbors to expend countless amounts to repeatedly challenge new decisions.

Although the parties frame the mootness issue in terms of whether it should have been analyzed under procedures for a motion to dismiss as opposed to a motion for summary judgment, and the circuit court appears to have addressed the issue in this context, such an approach is misplaced. "[M]ootness is an issue of subject matter jurisdiction." Hamilton ex rel. Letham v. Lethem, 119 Hawai'i 1, 4, 193 P.3d 839, 842 (2008). "[T]he issue of subject matter jurisdiction can be properly raised at any time." Garner v. State, 122 Hawai'i 150, 168 n.15, 223 P.3d 215, 233 n.15 (App. 2009). "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action." Hoku Lele, LLC v. City & Cnty. of Honolulu, 129 Hawai'i 164, 166, 296 P.3d 1072, 1074 (App. 2013) (citation omitted).

> It is well-settled that the mootness doctrine encompasses the circumstances that destroy the justiciability of a case previously suitable for determination. A case is moot where the question to be determined is abstract and does not rest

on existing facts or rights. Thus, the mootness doctrine is properly invoked where "<u>events ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.</u>"

<u>Diamond v. Bd. of Land & Natural Res.</u>, 112 Hawaiʻi 161, 170, 145 P.3d 704, 713 (2006) (emphasis added) (citation omitted). "The proponent of mootness has the heavy burden of persuasion." <u>Knuckles v. Weinberger</u>, 511 F.2d 1221, 1222 (9th Cir. 1975) (citation and internal quotation marks omitted); <u>see</u> <u>Princeton Cmty. Phone Book, Inc. v. Bate</u>, 582 F.2d 706, 710 (3rd Cir. 1978) ("[A] party arguing that a case is moot must bear a heavy burden of <u>demonstrating the facts</u> underlying that contention." (Emphasis added.)); <u>Cnty. of Hawaii v. Ala Loop Homeowners</u>, 123 Hawaiʻi 391, 404-05, 235 P.3d 1103, 1116-17 (2010) (holding proponent of mootness failed to establish the claim as moot).

To carry this burden, the proponent must be permitted to bring evidence to the court's attention. <u>See</u> <u>Princeton Cmty.</u>, 582 F.2d at 710. The court can and should consider evidence outside of the record for the purpose of determining mootness. <u>See</u> <u>AIG Hawaiʻi Ins. v. Bateman</u>, 82 Hawaiʻi 453, 459, 923 P.2d 395, 401 (1996) (indicating that the parties should have disclosed a settlement that did not appear in the record, and if they had done so the court likely would have dismissed the appeal as moot); <u>Wong v. Bd. of Regents</u>, 62 Haw. 391, 396, 616 P.2d 201, 204-05 (1980) (finding mootness based on events that occurred during the pendency of appeal); <u>Queen Emma Found. v. Tatibouet</u>, 123 Hawaiʻi 500, 508, 236 P.3d 1236, 1244 (App. 2010) ("We conclude that events occurring after the circuit court's entry of its Final Judgment have rendered Defendants' challenge to the circuit court's grant of declaratory relief moot.").

HCF asserts that review of the exemptions pertaining to Buildings A and C are moot because, instead of the original SMA exemption for Buildings A and C, there is a new SMA exemption for Building A and an amended exemption for Building C which ruined the justiciability of the original exemption. The pertinent facts for consideration of the mootness issue are as follows.

17

In a letter dated August 24, 2010, HCF requested that the Planning Director rescind and revoke the SMA Minor Use Permit and Final Plan Approval for Building B. Further, attached to another letter dated August 24, 2010, HCF submitted a new SMA Use Permit Assessment Application (August 2010 Assessment Application) requesting a SMA exemption for revised proposals to Building A. The revised proposals sought to have Building B become an "as-built family room" for Building A by connecting those buildings.

In a letter dated August 27, 2010, the Planning Director revoked the SMA Minor Use Permit and Final Plan Approval for Building B. Further, in a letter dated September 27, 2010, the Planning Director informed HCF that a SMA exemption (September 2010 SMA Exemption) had been approved for the proposals in the August 2010 Assessment Application for Building B to be a family room for Building A. Neither this letter nor any other action by the Planning Director rescinded its prior action as to Building A.

In a letter dated September 20, 2010, HCF "supplement[ed] and clarifie[d] the proposed activities to Building C[,]" but did not submit a new assessment application. In a letter dated October 6, 2010, the Planning Director determined that the amended proposed activities regarding Building C were still exempt, subject to the conditions of the initial SMA exemption.

The Neighbors, HCF, and the Planning Director agree that the specific issues related to the SMA Minor Permit and Final Plan Approval for Building B are moot. The circuit court, in effect, dismissed the appeals related to these issues as part of the Judgment. HCF asserts, however, that the appeals related to the exemptions for Buildings A and C are similarly mooted and

should have been dismissed for lack of subject matter jurisdiction pursuant to HRCP Rule 12(h)(3).[16]

Despite HCF's efforts to focus on the new or amended exemptions, HCF has failed to establish that the exemptions for Buildings A and C set forth in the Planning Director's October 20, 2009 letter are no longer valid, or that the justiciability of the issues related to these exemptions has been compromised.[17]

HCF acknowledged "existing entitlements" in its subsequent August 2010 Assessment Application that exempt Buildings A and C from the definition of "development." Moreover, there is nothing in the record or which HCF sought to add to the record that demonstrates the original exemptions under the October 20, 2009 letter were relinquished, revoked or rescinded or that HCF requested such action. In fact, when the Planning Director acknowledged HCF's amended plans for Building C, information which "supplement[ed] and clarifie[d]" HCF's proposed activities, it was processed under the same application number as the October 2009 Assessment Application. In briefing, HCF only states without explanation that it would be "ludicrous" to suggest HCF would still use the October 2009 SMA exemptions after issuance of the September 2010 SMA exemption for Building A and the amended exemption for Building C.

HCF has failed to carry its burden to demonstrate that the appeals regarding the exemptions to Buildings A and C are moot. Moreover, although issues specific to the SMA Minor Permit and Final Plan Approval for Building B are moot, in evaluating the issues regarding the exemptions for Buildings A and C, we review the entire proposal as submitted in the October 2009 Assessment Application because that is what the Planning Director

_____

[16] HRCP Rule 12(h)(3) provides "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[17] The Planning Director's revocation of the SMA Minor Use Permit and the Final Plan Approval only dealt with the proposed use of Building B.

acted upon in granting exemptions for Buildings A and C. <u>See</u> HRS § 91-14.

**B. SMA Exemptions for Buildings A and C**

**1. Standard of Review**

As a secondary appeal,

[t]he standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision. This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

> HRS § 91-14(g) (1993) enumerates the standards of review applicable to an agency appeal and provides: Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions; or
> > (2) In excess of the statutory authority or jurisdiction of the agency; or
> > (3) Made upon unlawful procedure; or
> > (4) Affected by other error of law; or
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> An agency's findings of fact are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.
>
> An agency's conclusions of law (COLs) are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.
>
> A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. [T]he court

> should not substitute its own judgment for that of the agency.

Curtis v. Bd. of Appeals, Cnty. of Hawai'i, 90 Hawai'i 384, 392-93, 978 P.2d 822, 830-31 (1999) (citations and internal quotation marks omitted).

As to statutory construction and interpreting administrative rules,

> [t]he general principles of construction which apply to statutes also apply to administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning.

Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 454, 99 P.3d 96, 105 (2004) (citation omitted). "Moreover, an administrative agency's interpretation of its own rules is entitled to deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose." In re Doe Children, 105 Hawai'i 38, 53, 93 P.3d 1145, 1160 (citation and internal quotation marks omitted).

## 2. Exemptions 6 and 15 Do Not Apply

The Planning Director and HCF contend that the circuit court erred in reversing the decisions of the Planning Director and the Board to exempt the proposed actions to Buildings A and C from the definition of "development," which would exempt those proposals from further SMA review. In her October 20, 2009 letter, the Planning Director determined that the proposed activity to Buildings A and C was not "development" because HRS § 205A-22 and Rule 9-4(10)(B) establish exemptions for "repair[s], maintenance or interior alterations to existing structures[.]" HRS § 205A-22(6); HPC Rule 9-4(10)(B)(vi) (Exemption 6). The Board also relied upon Exemption 6 in its FOF/COL. Additionally, the circuit court found, and no party contests, that during testimony before the Board, the Planning Director stated she also granted the exemptions because she found the proposed activity to Buildings A and C expressly exempt under the exemption for "[s]tructural and non-structural improvements to existing single-family residences, where otherwise

21

permissible[.]" HRS § 205A-22(14); HPC Rule 9-4(10)(B)(xv) (Exemption 15).

In reversing the Planning Director and the Board's exemptions for Buildings A and C, the circuit court concluded that the proposed actions as to Building A went beyond the "repair and maintenance" allowed under Exemption 6, and that, as to both Buildings A and C, each was not an "existing structure" within the meaning of Exemption 6 or an "existing single-family residence" within the meaning of Exemption 15.

For the reasons discussed below, we agree that Exemptions 6 and 15 do not apply to either Building A or Building C.

### a. Building A

In its October 2009 Assessment Application, HCF proposed "interior <u>and</u> exterior renovations (including a new kitchen)" to Building A. The circuit court made factual findings, uncontested by the parties, that the proposed work to Building A included adding an ADA bathroom and ramp that would increase the building's footprint. "Findings of fact . . . that are not challenged on appeal are binding on the appellate court." <u>Okada Trucking Co. v. Bd. of Water Supply</u>, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

The proposed scope of work for Building A went beyond the type of work encompassed in Exemption 6. "[W]here the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning." <u>State v. Wells</u>, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks and citations omitted).

The plain language of Exemption 6 exempts "repair, maintenance, or interior alterations to existing structures[.]"[18] Exterior alterations that are not "repair" or "maintenance" are

_____

[18] The part of Exemption 6 dealing with "repair, maintenance or interior alterations . . . . *relating to existing uses*" is not pertinent to our analysis, because HCF and Planning Director only argue Exemption 6 applies because Buildings A and C are "existing structures" and no party challenges the circuit court's FOFs 26 and 28 that both Buildings A and C have not been used for any purpose for a period of at least two years.

not covered by the exemption. "Repair" means to "restore by replacing a part or putting together what is torn or broken." Webster's Third New International Dictionary 1923 (1981). In turn, "maintenance" means "[t]he care and work put into property to keep it operating and productive; general repair and upkeep." Black's Law Dictionary 1097 (10th ed. 2014). The addition of an ADA bathroom and ramp, which increases the building's footprint, does not constitute either repair or maintenance. The circuit court was thus correct in concluding that the proposed work to Building A went beyond the scope of work contemplated by the plain language of Exemption 6 for "repair, maintenance, or interior alterations"[19] and thus Exemption 6 does not apply to Building A.

Additionally, Building A is not a "single-family residence" within the meaning of Exemption 15. As acknowledged in the Planning Director's October 20, 2009 letter approving the SMA exemption, the proposed renovations to Building A were to "return the structure back to a single-family dwelling use." (Emphasis added.) This included adding a "new kitchen." Moreover, the circuit court found, and it is uncontested, that by 1982, any kitchen in Building A (if there ever was a kitchen) had been removed. Thus, by the time the SMA assessment application was submitted to the Planning Director in October 2009, Building A had no kitchen.

The definition of "single-family residence" in HPC Rule 9-4(21) states that the building must be "designed for and/or used as the complete facility for cooking, sleeping and living area of a single family only and occupied by no more than one

---

[19] "Legislative history may be used to confirm interpretation of a statute's plain language." E&J Lounge Operating Co. v. Liquor Comm'n of City & Cnty. of Honolulu, 118 Hawai'i 320, 335, 189 P.3d 432, 447 (2008) (citation omitted). When initially enacted in 1975, HRS Chapter 205A only contained one exemption: "Development does not include construction, repairs or maintenance of a single family residence which is not part of a larger development." 1975 Haw. Sess. Laws Act 176, § 1 at 385-86. In 1979, the legislature added more exemptions, including the relevant portion here, to "deal with activities which are minor, routine or with activities which are not the type that should be subject to a permit procedure[.]" S. Stand. Comm. Rep. No. 936, in 1979 Senate Journal, at 1435; 1979 Haw. Sess. Laws Act 200, § 7 at 418-19.

family." (Emphasis added.) Without a kitchen, Building A did not meet the requirements for a single-family residence when the assessment application was submitted.[20] The circuit court correctly concluded that Building A was not an "existing single-family residence."

For the reasons stated above, Exemptions 6 and 15 do not apply to the actions proposed for Building A. The decision by the Planning Director and the Board to exempt the Building A proposals from further SMA review under these exemptions was in violation of statutory provisions, affected by other error of law, and clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. HRS § 91-14(g)(1), (4), (5).

In light of our discussion above, we need not consider the other grounds relied upon by the circuit court in reversing the Planning Director and the Board's decision to exempt the proposed actions for Building A from the definition of "development."

### b. Building C

The written decisions by the Planning Director and the Board implicitly conclude that Building C was an "existing structure," but do not provide a clear explanation for the basis of this conclusion. At most, the Planning Director's October 20, 2009 letter states as to Building C that "[s]ince the dwelling was legally constructed in 1970, the remodeling and renovation of this structure is exempt from the definition of 'development[.]'" In her testimony before the Board, the Planning Director elaborated and testified that when an application is filed, her office typically looks at real property tax records to see what structures are on the property, and those tax records usually

---

[20] HCF argues that the circuit court did not consider that Building A may have been a "nonconforming structure" which was grandfathered under the County Zoning Code, so did not require a kitchen. First, HCF does not indicate where it raised this argument before the circuit court or point to any evidence supporting it. Second, being grandfathered under the Zoning Code does not automatically mean that a structure complies with the definition of "single-family residence" specifically provided in HPC Rule 9-4(21) as to SMA review.

indicate whether a building permit has been pulled and the use of the building for tax purposes. She further testified that in determining whether there is an existing structure, she and her staff look at whether the building is physically existing by reviewing the real property tax records, but they do not look at permits from the County of Hawaiʻi building department. She also indicated that, because there have been different codes over time, *i.e.* there was no SMA law in 1960 and the zoning code was different in 1960, "we look at when a building is physically put on the ground."

The circuit court concluded that because Buildings A and C had been substantially renovated without building permits, they are not "existing" for purposes of qualifying for the SMA exemptions. The Planning Director and HCF argue that the circuit court erred as to its interpretation of whether a structure was "existing," asserting that "existing" as used in the SMA laws does not require continued compliance with building permits because *inter alia* the Planning Director possesses no authority to enforce the building code.

No party contests the circuit court's FOF 18 that "[s]ince 1961, <u>without any buildings permits</u>, Building 'C' was <u>expanded with extensions and additions in excess of 100% of its original footprint</u> to a present floor plan of 1,884 square feet." (Emphasis added.) Therefore, Building C clearly was not properly permitted at the time HCF filed the October 2009 Assessment Application. Indeed, it was more than twice the size of what had been permitted in 1961. Although HRS Chapter 205A and HPC Rule 9 provide no definition for an "existing structure" or "existing single-family residence" -- the relevant phrases under Exemptions 6 and 15 -- we conclude that given the purpose of HRS Chapter 205A, "existing" cannot simply mean physically existing or that an original structure was permitted but has since been drastically altered.

"When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature,

which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Gray v. Admin. Dir. of the Court, State of Hawai'i, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (citation omitted) (block format altered); Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 103, 194 P.3d 531, 544 (2008). As demonstrated in Nuuanu, the Hawai'i Supreme Court has previously limited construction of statutory language where literal interpretation was inconsistent with the statute's purpose. Id. at 103-04, 194 P.3d at 544-45.

If "existing" merely meant physically present or only that at some point an original structure was permitted, the result would be obviously inconsistent with the purposes of Chapter 205A, Part II. The express purpose for designating and regulating SMAs was to place special controls on land use within the area along the shoreline to "preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii."[21] HRS § 205A-21. Further, the legislature mandates that "[n]o development shall be allowed in any county within the special management area without obtaining a permit in accordance with this part." HRS § 205A-28. Yet, as evidenced by the facts of this case, if "existing" as to Building C merely means physical presence on the land or that an original structure was permitted but it has since doubled in size, HCF would be allowed to significantly expand a structure in violation of the applicable building code, or the requirements of SMA regulations,

---

[21] In its entirety, HRS § 205A-21 provides

> HRS § 205A-21 Findings and purposes. The legislature finds that, special controls on developments within an area along the shoreline are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure that adequate access, by dedication or other means, to public owned or used beaches, recreation areas, and natural reserves is provided. The legislature finds and declares that it is the state policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii.

propose subsequent alterations to the building, claim exemption to SMA review as an "existing structure," and thus never undergo SMA review for the unpermitted construction. To allow such action outside the parameters of the SMA statutes and regulations is clearly inconsistent with the purpose of HRS Chapter 205A, Part II and HPC Rule 9.

Given the large scale expansion of Building C without any permits, we cannot endorse the idea that it was an "existing structure" or an "existing single family residence" for purposes of exempting it from SMA review under Exemptions 6 and 15. Further, our interpretation of these phrases does not mean HCF is prohibited from taking any action as to Building C going forward. Rather, it simply means that Exemptions 6 and 15 do not apply to exempt the proposed actions to Building C from the definition of "development" and therefore the proposals are not exempt from SMA review on these grounds. Even if no other exemptions apply, HCF may proceed to seek permits through the SMA review process. See HPC Rules 9-10 & 9-11.

The circuit court was thus correct in reversing the decisions by the Planning Director and the Board to exempt the actions proposed for Building C from the definition of "development." The exemption of the proposed activity to Building C was in violation of HRS Chapter 205A, Part II and HPC Rule 9, and thus violated applicable statutory provisions and was affected by error of law. HRS § 91-14(g)(1), (4).

Given our discussion above, we need not address any other issues related to whether the Building C proposals constitute "development." Specifically, we need not address whether the proposed action in the October 2009 Assessment Application would have a cumulative impact that would require it to be considered "development."

C. **Proposed Actions Not Consistent with Zoning Code**

In reversing the Planning Director and the Board, the circuit court also based its decision on HRS § 205A-26(2)(C), which requires that no development be approved unless it is

27

determined that "the development is consistent with the county . . . zoning." The circuit court ruled that HCF's October 2009 Assessment Application was not consistent with the zoning code for various reasons, and hence, HRS § 205A-26(2)(C) was violated.

We do not agree that HRS § 205A-26(2)(C) applies because the actions by the Planning Director and the Board were not to approve "development," but rather to determine that the proposed action was exempt from the definition of "development." Nonetheless, we believe that compliance with the County of Hawaii's zoning code remains a proper consideration for exempting proposed action from the definition of "development" and thus from SMA review. Chapter 25 of the Hawai'i County Code (Zoning Code) § 25-2-1(b) (1983, republished 2005) provides that "[t]he director shall enforce all other provisions of [the Zoning Code] pertaining to land use." Further, § 25-2-2 expressly requires that

> [a]ll departments, officials, and public employees authorized to issue permits or licenses shall conform to the [Zoning Code] and no permit or license for any use, building, or other purpose shall be issued where the license or permit would be in conflict with the provisions of this chapter. Any permit or license, if issued in conflict with the [Zoning Code], shall be void.

No party offers a substantive challenge to the circuit court's conclusion that the October 2009 Assessment Application proposed three buildings with three uses on a property that is 26,014 square-feet and zoned RS-10, and thus the proposal was inconsistent with the Zoning Code.[22]

Per Zoning Code §§ 25-5-2 and 25-5-8, RS-10 means that the single-family residential district requires ten thousand square-feet as a minimum building site area for each main

---

[22] The conclusion is set forth in COL 11, which is challenged by HCF only on grounds that the case is moot and the court should not have reached the issue. HCF does not contend that its proposals for Buildings A, B, and C complied with the Zoning Code.

building on a property.[23]  See Zoning Code § 25-4-31(a) ("Unless otherwise specified in this chapter, each main building must be located on a building site having not less than the established zoning district minimum building site area.").  The Property, at 26,014 square-feet, is permitted two single-family residences. Zoning Code § 25-5-8(a).  Because HCF's proposal asserted that Buildings A and C would be single-family residences, Building B would have to be an accessory building, ohana dwelling, or a guest house.[24]  Zoning Code §§ 25-5-3(c) and 25-5-8.  Per the October 2009 Assessment Application under review in this case, however, HCF did not propose Building B as an accessory building, ohana dwelling, or a guest house, but rather specifically proposed Building B as a "meeting facility for classroom activities and church related functions, with no overnight accommodation."

The proposals in the October 2009 Assessment Application did not comply with the Zoning Code; not because of any church-related activities, but because Building B was not proposed as an accessory to the two proposed single-family dwellings.  Thus, although we rely on a different provision to consider compliance with the Zoning Code, the circuit court was correct that the decisions by the Planning Director and the Board

---

[23]  During her testimony before the Board, Leithead-Todd responded to questions regarding how three separate buildings could be authorized on the Property by explaining that she only focused on the status of a meeting facility as a permitted use, and that "we've approved multiple buildings on single family residential. We've approved detached buildings on single family residential. As long as it has the setbacks we don't look at those numbers."

[24]  Per § 25-1-5(b),

> "Accessory building" means a building, no more than twenty feet in height, detached from and subordinate to a main building or main use on the same building site and used for the purposes customarily incidental to those of the main building or use.
>
> . . . .
>
> "Guest house" means an accessory building used as sleeping quarters for guests of the occupants of the main dwelling and having no cooking facilities.
>
> . . . .
>
> "Ohana dwelling" means a second dwelling unit permitted to be built as a separate or an attached unit on a building site, but does not include a guest house or a farm dwelling.

were affected by error of law because HCF's proposal did not comply with the Zoning Code.

### D. Judicial Taking

HCF argues that the circuit court's reversal of the Planning Director's and Board's decisions to exempt Buildings A and C amounted to a judicial taking. HCF contends that the buildings on the Property went from being taxed by the county and in the county's records, to being no longer legally "existing." HCF asserts that the circuit court's decision ran counter to established case law, namely Waikiki Marketplace Investment Company v. Chair of Zoning Board Of Appeals of City & County of Honolulu, 86 Hawaiʻi 343, 949 P.2d 183 (App. 1997), and thus amounted to a retroactive alteration of state law that constitutes an unconstitutional taking. See Ryan v. Tanabe Corp., 97 Hawaiʻi 305, 315, 37 P.3d 554, 564 (App. 1999). HCF also asserts that the circuit court's decision deprived the Property of all economically viable use and is thus an unconstitutional taking of property.

HCF's arguments are without merit. Even if we were to assume that HCF posits a viable judicial taking theory, the circuit court's decision was not a retroactive alteration of state law. In Waikiki Marketplace, this court merely held that a property owner "should not have been required to produce a building permit in order to establish that [an] addition was a 'nonconforming structure' or 'nonconforming use'" under the applicable land use ordinance because terms such as "lawful use" and "previously lawful" as used in the land use ordinances only refer to compliance with previous zoning laws. 86 Hawaiʻi at 356, 949 P.2d at 196. The instant matter did not involve whether HCF could demonstrate status as a "nonconforming structure" or "nonconforming use" under the Zoning Code.

Further, HCF's assertion that the Property has been deprived of all economically viable use or of an existing structure is without merit. HCF is merely required to undergo further SMA review of the proposed activity.

### E. Other Issues on Appeal

Because we agree with the circuit court that the Planning Director and the Board improperly relied on Exemptions 6 and 15, we need not address whether the activity proposed in the October 2009 Assessment Application would have a cumulative impact that would require the activity to be considered "development." We further need not reach the issue of whether an EA or EIS was required in this case as part of the Planning Director's review of the October 2009 Assessment Application.

Lastly, while we hold that the proposed action as contained in the October 2009 Assessment Application did not comply with the Zoning Code, we do so only on the issue of the number of buildings in relation to the required square footage. We need not address, and therefore, express no opinion in regard to, the issue of a meeting facility used by a church and any potential requirement to obtain a use permit under the Zoning Code.

### F. Neighbors' Request for Attorneys' Fees and Costs

#### 1. PAGD

The Neighbors contend that the circuit court erred by denying their requests for attorneys' fees and costs based on the court's conclusion that the facts of this case do not support an award under the PAGD. The Neighbors rely on Sierra Club v. Department of Transportation of the State of Hawai'i, 120 Hawai'i 181, 202 P.3d 1226 (2009), and In re Water Use Permit Applications, 96 Hawai'i 27, 25 P.3d 802 (2001) (Waiāhole II). Traditionally, we review the denial and granting of attorneys' fees under the abuse of discretion standard. Chun v. Bd. of Trs. of Emps.' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citations omitted). As to PAGD, the Hawai'i Supreme Court has further indicated that "[w]e retain the abuse of discretion standard,

31

noting however that we review de novo whether the trial court disregarded rules or principles of law that arise in deciding whether or not a party satisfies the three factors of the private attorney general doctrine." Honolulu Constr. & Draying Co. v. Dept. of Land & Natural Resources, 130 Hawai'i 306, 313, 310 P.3d 301, 308 (2013).

The Neighbors fail to demonstrate that the circuit court abused its discretion or erred in considering their request for attorneys' fees and costs under the PAGD. "Courts applying the [PAGD] consider three basic factors: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, and (3) the number of people standing to benefit from the decision." Id. at 308, 310 P.3d at 303 (citation, brackets, and emphasis omitted). The Neighbors assert they have vindicated important public policy in the form of the environmental requirements of the Coastal Zone Management Act, HRS Chapter 205A.

In Goo v. Arakawa, 132 Hawai'i 304, 321 P.3d 655 (2014), the Hawai'i Supreme Court held that the third prong of the PAGD was not satisfied and thus a request for attorneys' fees was properly denied. Id. at ___, 321 P.3d at 670-71. In Goo, neighboring homeowners challenged the County of Maui's decision to exempt certain development projects from a height restriction law. In regards to whether the PAGD applied to the circumstances of the case, the supreme court noted that "[t]his case . . . did not involve the enforcement of law of general state-wide applicability, did not benefit a substantial number of people on a scale comparable to decisions such as [Sierra Club] or [Waiāhole II], and lacks general precedential value." Id. at ___, 321 P.3d at 670.

Here, although we are addressing legal issues under the SMA, the decision in this case is fact specific and will not benefit substantial numbers of people. See id. The circuit court's Judgment was specific to the exemptions granted for

32

Buildings A and C, as well as the particular structures on the Property. The Neighbors do not demonstrate that they satisfy all prongs of the test for obtaining fees and costs under the PAGD. Waiāhole II, 96 Hawai'i at 31, 25 P.3d at 806 (holding that a party did not satisfy the PAGD test even though it met two of the three prongs). The circuit court thus did not err in denying the Neighbors' request for fees and costs pursuant to the PAGD.

### 2. Taxation of Costs

In their opening brief, the Neighbors also assert that the circuit court abused its discretion in denying taxation of costs against HCF and the Planning Director as non-prevailing parties pursuant to HRS § 607-9 and HRCP Rule 54(d)(1). The Neighbors assert that the circuit court failed to provide an explanation for its denial of costs, and particularly, expert witness costs. However, we note that the Neighbors did not present these issues in their "Statement of Points of Error" section, and failed to indicate where in the record the alleged error was objected to or brought to the attention of the court as required by Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4). Thus, these issues are waived. See HRAP Rule 28(b)(4).

Even if these issues were not waived, in their motion for attorneys' fees and costs before the circuit court, the Neighbors only cited to HRS § 607-9, not HRCP Rule 54(d)(1), and only requested recovery of costs for an expert witness in their motion. However, "expert witness fees are not taxable as costs, absent a statute specifically allowing such an expense." Mist v. Westin Hotels, Inc., 69 Haw. 192, 202, 738 P.2d 85, 92 (1987). The Neighbors cite to no statute which allows such taxation.

### V. Conclusion

Based on the foregoing, we affirm the Circuit Court of the Third Circuit's Final Judgment filed on May 2, 2011, to the extent that it reverses the decisions of the Planning Director and the Board to exempt the proposed action to Buildings A and C from the SMA process and to the extent that it is based on the

reasons set forth in this opinion.  We do not reach the other grounds relied upon by the circuit court in the Circuit Court FOF/COL filed on January 5, 2011.

We also affirm the denial of the Neighbors' requests for attorneys' fees and costs as set forth in the circuit court's order filed on May 2, 2011.

DATED:  Honolulu, Hawai'i, June 30, 2014.

On the briefs:

Amy G. Self
Deputy Corporation Counsel
County of Hawai'i
for County of Hawai'i Planning
Department and Bobby Jean
Leithead-Todd, Director of the
Planning Department of
the County of Hawai'i
in CAAP-11-0000071, CAAP-11-0000074,
CAAP-11-0000433 and CAAP-11-0000434

Francis L. Jung
Steven A. Kornberg
Donna V. Payesko
(Jung & Vassar, P.C.)
for John F. Dagres and Judith Fitzgerald
in CAAP-11-0000071, CAAP-11-0000074,
CAAP-11-0000433, and CAAP-11-0000434

Steven S.C. Lim
Mason M. Yamaki
(Carlsmith Ball LLP)
for Hawai'i Conference Foundation
in CAAP-11-0000071, CAAP-11-0000074,
CAAP-11-0000433, and CAAP-11-0000434

Chief Judge

Associate Judge

Associate Judge